**YORK ASSOCIATES, INC., Plaintiff,**

**v.**

**SECRETARY, DEPARTMENT OF HOUS-
ING AND URBAN DEVELOPMENT, et
al., Defendants.**

Civ. A. Nos. 91–3094 (CRR), 93–839.

United States District Court,
District of Columbia.

April 27, 1993.

See also 815 F.Supp. 16.

John J. Knapp, Charles H. Roistacher of Powell, Goldstein, Frazer & Murphy, Washington, DC for plaintiff.

Jay B. Stephens, U.S. Atty., District of Columbia and Jeffrey T. Sprung, Asst. U.S. Atty., for U.S.

Barbara Nicastro of Bethel & Nicastro, Washington, DC, for defendant Government Nat. Mortg. Ass'n.

## OPINION

CHARLES R. RICHEY, District Judge.

Before the Court is the Plaintiff's Motion for Summary Judgment on Counts I, X, XI, and XII of the Complaint.

The Plaintiff York Associates is a multi-family mortgage lender which issued mortgage loans coinsured by the Government under the National Housing Act. 12 U.S.C. § 1701 *et seq.* The Plaintiff alleges that by virtue of § 520 of the National Housing Act, it is entitled to interest on certain payments received by it from the Defendant Department of Housing and Urban Development.[1] Thus, the issue before the Court is whether § 520 of the National Housing Act, 12 U.S.C. § 1735d, applies to mortgage loans made pursuant to the coinsurance program established by § 244 of the National Housing Act, 12 U.S.C. § 1715z–9. For the reasons fully discussed herein, the Court finds that § 520 does apply under these circumstances and the Court shall grant summary judgment for the Plaintiff as to Counts I, X, XI, and XII of the Complaint.

## I. BACKGROUND

The loans which are at issue in this case are part of a mortgage-backed securities program authorized by 306(g) of the National Housing Act ("NHA"), 12 U.S.C. § 1721(g), operated by Defendant Government National Mortgage Association ("GNMA"). Under that program, the lender issues securities that are secured by the properties subject to its coinsurance loans and enters into a guaranty agreement with GNMA. The lender pays a fee to GNMA in return for the Government's insurance of the loans. The lender collects interest payments from the borrower and pays interest to the security holders. However, when a borrower defaults, the lender must still make payments to the security holders and file for reimbursement. In the event that a lender does not make these payments to security holders, it is declared in default and GNMA then acquires the lender's entire portfolio, becoming a successor-in-interest as to all the loans.

In the instant case, York Associates ("York") issued several mortgage loans between 1983 and 1989 that were coinsured by HUD pursuant to § 244 of the National Housing Act, 12 U.S.C. § 1715z–9. Under § 244 of the NHA, when a borrower defaults, HUD is required to reimburse the lender for up to 90% of the loss caused by the default and the lender bears the remaining shortfall. Reimbursement payments by HUD to the lender may be made in the form of debentures or cash, depending on the preference of the lender. 24 C.F.R. 255.819 (1988) ("The Commissioner will pay insurance benefits in cash, unless the lender files a written request for payment in debentures."). Pursuant to the decision of the Court of Appeals for the District of Columbia Circuit in *DRG Fund-*

---

1. The Court also has before it Cross–Motions for Summary Judgment as to the remaining counts of the Complaint. These remaining counts are founded upon the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, and allege that the Defendant Department of Housing and Urban Development and Defendant Government National Mortgage Association acted arbitrarily and capriciously with regard to certain actions taken by both agencies when requesting and withholding payments.

   The Plaintiff has informed the Court that relief on the National Housing Act claims would ren-

   der the APA claims moot. *See* letter to the Court from Plaintiff's counsel, dated February 18, 1993, at 3 ("A decision favorable to York on the Section 520(a) claims would moot every other claim in the action"). Therefore, the Court need not consider the motions as to these APA counts and shall deny them without prejudice as moot. Similarly, the Plaintiff's Motion to Strike declarations submitted by the Defendant Government National Mortgage Association also concerns these APA claims and shall be denied without prejudice as moot.

*ing Corp. v. Sec'y, Housing and Urban Development,* 898 F.2d 205 (D.C.Cir.1990), when such a reimbursement payment is in the form of debentures, it must include interest from the date of default.

In this case, when the borrowers defaulted in their payments to York, it filed for reimbursement benefits with HUD as to those loans. Subsequently, York defaulted in its payments due to GNMA under the mortgage-backed securities program and GNMA took over York's loan portfolio. As required, HUD made reimbursement payments to York and GNMA pursuant to the coinsurance agreements. However, the payments were made in cash, not debentures, and did not include interest from the date of default. The Plaintiff here maintains that, pursuant to § 520 of the NHA, a reimbursement payment by HUD made in cash must include the same amount of interest as York would be entitled to if the payment had been made in debentures. The Defendant HUD maintains that § 520 does not apply to coinsurance loans so the Plaintiff is not entitled to interest from the date of default.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The parties in this action do not dispute any of the facts material to the determination of these counts and, therefore, summary judgment is appropriate.

II. BY ITS CLEAR LANGUAGE, SECTION 520 OF THE NHA APPLIES TO CASH COINSURANCE REIMBURSEMENTS MADE BY HUD TO A LENDER UNDER § 244.

In *DRG Funding Corp. v. Sec'y, Housing and Urban Development,* 898 F.2d

205 (D.C.Cir.1990), our Circuit Court of Appeals held that when HUD reimbursed a mortgage-lender in debentures under § 244 of the NHA, the debentures must include the amount of interest earned as of the date of default, not as of the later date of settlement. The Court in *DRG Funding* addressed the exact same coinsurance statutes and regulations that are before the Court in this case.[2] Therefore, pursuant to *DRG Funding,* it is clear that if the reimbursement payments to the Plaintiff in this case were made in the form of debentures, then the Plaintiff would be entitled to interest from the date of default.

The Plaintiff asserts that, by its plain language, § 520 of the National Housing Act requires that cash reimbursement payments made on coinsurance loans must include an amount equal to the interest on the debentures. The Plaintiff argues convincingly that the language of § 520 requires that any cash payment of interest made by HUD must be the same as any payment of interest made in debentures under the same circumstances. Section 520 of the NHA provides that:

> Notwithstanding any other provisions of this chapter with respect to the payment of insurance benefits, the Secretary is authorized, in his discretion, to pay in cash or in debentures any insurance claim or part thereof which is paid on or after August 10, 1965, on a mortgage or a loan which was insured under any section of this chapter either before or after such date. **If payment is made in cash, it shall be in an amount equivalent to the face amount of the debentures that would otherwise be issued plus an amount equivalent to the interest which the debentures would have earned, computed to a date to be established pursuant to regulations issued by the Secretary.**

12 U.S.C. § 1735d(a) (emphasis added). The Court finds that the language of § 520 clearly and unambiguously requires the payment

---

**2.** In deciding whether interest from the date of default was owed a lender under § 244, the Court of Appeals in *DRG Funding* looked to the regulations enacted pursuant to the coinsurance program in § 244. *DRG Funding,* 898 F.2d 205, 207. The regulations promulgated under those

loans were found in 24 C.F.R. Part 255. *Id.* After examining those regulations, the Court of Appeals concluded that when reimbursement payments under § 244 took the form of debentures, the lender was entitled to interest from the date of default. *Id.* at 207–209.

of the interest sought by the Plaintiff. By its clear language, § 520 applies to the payment of cash coinsurance benefits of the type at issue in this case unless some other statutory provision governs. The Defendant HUD argues that another provision trumps over § 520 and it is this contention which the Court shall now address.

III. SECTION 244 OF THE NHA DOES NOT BAR THE PAYMENT OF DEBENTURE INTEREST TO YORK IN THIS CASE BECAUSE SECTION 244 DOES NOT ADDRESS WHETHER THIS INTEREST MUST BE PAID TO A LENDER AND SECTION 244 IS NOT INCONSISTENT WITH SECTION 520.

A. Whether a Lender is Entitled to Interest on Cash Payments is Not a "Calculation" Within the Meaning of § 244 of the National Housing Act

█ It is HUD's position that § 520 does not apply to these reimbursement payments. HUD maintains that § 244 of the NHA, 12 U.S.C. § 1715z–9, is an independent grant of authority from § 520 and that HUD's regulations, enacted pursuant to § 244, are the only applicable rules regarding the payment of the coinsurance benefits. *See* 24 C.F.R. §§ 255.820–255.823 (1988). HUD argues, because the regulations promulgated under § 244 do not provide for interest from the date of default, *see* 24 C.F.R. §§ 255.820–255.823 (1988), York is not entitled to debenture interest.

The Court does not agree. Section 244 provides that:

Any contract of co-insurance under this section shall contain such provisions relating to the ... **manner** of calculating insurance benefits ... and other similar matters as the Secretary may prescribe pursuant to regulations.

*Id.* (emphasis added).

The Court notes that an argument similar to the one advanced here by HUD was rejected by the Court of Appeals for this Circuit in *DRG Funding.* In *DRG Funding,* HUD argued that regulations requiring interest from the date of default conflicted with coinsurance regulations regarding the calcu-lation of benefits. Our Court of Appeals rejected HUD's claim and found that the calculation of the amount of reimbursement due a lender was different than deciding whether the lender was entitled to interest from the date of default. *DRG Funding v. HUD,* 898 F.2d 205 (D.C.Cir.1990). The Court reasoned that the calculation provisions can be "read to determine the amount of the coinsurance claim on which the interest on the debenture runs rather than to determine the amount of the total payment (claim plus interest) that the coinsurer can receive." *Id.* at 209 n. 3.

Likewise, in this case, the Court finds that the requirement in § 520 that any cash coinsurance payment must equal the amount of the debenture payment, is not a manner of calculating a coinsurance claim. Rather, it is a provision to ensure that all claimants are treated equally regardless of the form of payment. The Defendant HUD has provided no reason, and the Court finds none, for reaching a different result here than our Court of Appeals in *DRG Funding.*

B. The Requirement that Cash Payments Equal Debentures Payments in § 520 is not Inconsistent With the Grant of Authority in § 244 and Therefore Applies to Loans of Coinsurance

█ HUD also contends that § 520 is inconsistent with § 244 and that, according to its terms, § 244 applies notwithstanding any statutory provision that is inconsistent with it. HUD therefore argues that § 244 trumps § 520 and points to § 244 which provides:

In addition to providing insurance as otherwise authorized under this Act, and notwithstanding any other provision of this Act **inconsistent** with this section, the Secretary ... may insure and make a commitment to insure under any provision of this subchapter any mortgage, advance, or loan otherwise eligible under such provision, pursuant to a co-insurance contract.

12 U.S.C. 1715z–9(a) (emphasis added). However, the Court finds that there is nothing in the grant of authority under § 244 that is inconsistent with the provision in § 520 for cash payments to include the de-

benture interest. Again, this Court notes that such a conclusion is in accord with our Court of Appeals decision in *DRG Funding* that the calculation of a reimbursement claim is different than determining whether a lender is entitled to debenture interest. Therefore, this Court cannot say that § 244, which provides for such calculation, is inconsistent with § 520, which provides for debenture interest.

The Court also concludes that HUD's reliance on the legislative history of the National Housing Act is misplaced. When § 520 was enacted, the only insurance program was a fully-insured program. *See* 12 U.S.C. § 1713. Prior to its enactment, the only form of reimbursement was in debentures. *See* 12 U.S.C. § 1713(g). Section 520 created the option of receiving benefits in cash while simultaneously providing that those who received benefits in cash would be in the same position as those receiving debentures. *See* 12 U.S.C. § 1735d. Section 244 providing for coinsured loans was enacted nine years later and gave much broader discretion to HUD in determining the terms of the agreements. The new section was enacted to permit the Secretary "a variety of approaches to risk sharing." S.Rep. No. 693, 1974 U.S.C.C.A.N. at 4273, 4288. While this Court notes that § 244 is indeed a broad grant of authority, there is nothing in the section which would indicate that Congress intended to depart from the policy that insurance benefits should be paid in a uniform manner.

Furthermore, there is nothing in HUD's regulations which apply to the agreements at issue in this case which would indicate that cash and debenture benefits are to be calculated differently. Although, as stated by the Court of Appeals in *DRG Funding*, the grant of authority in § 244 would allow HUD to make regulations independent of § 520, HUD has not in fact made such a regulation.

██ Finally, the Court notes that, in *DRG Funding*, HUD itself put forward the argument that § 520 applies to coinsurance loans and that the section would be violated if debentures included interest from the date of

default when cash payments did not. *See DRG Funding Corp. v. Sec'y, Housing and Urban Development*, No. 88–2202 (D.D.C. filed Mar. 31, 1989), *rev'd on other grounds*, 898 F.2d 205 (D.C.Cir.1990). The District Court concurred and held that § 520 did apply to loans of coinsurance and that paying different amounts for payments in debentures and cash would violate § 520. *Id.* It now seems that HUD has adopted the opposite position for the purposes of this litigation. Therefore, the usual deference paid to an agency's interpretation of a statute does not apply. *See Atkins v. Parker*, 472 U.S. 115, 133, 105 S.Ct. 2520, 2531, 86 L.Ed.2d 81 (1985) and *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 422, 91 S.Ct. 814, 826, 28 L.Ed.2d 136 (1971). The Court of Appeals reversed the District Court only to the extent that the payment of debenture interest from the date of default would violate § 520: "[w]e think that this argument is easily rejected because it assumes its conclusion; that somehow the cash payment would not include the same interest payments that are required to be paid if debentures are issued." *DRG Funding*, 898 F.2d at 209. It is clear from this passage that the Court of Appeals was assuming the applicability of § 520.

IV. NOTWITHSTANDING THE DECLARATORY JUDGMENT ENTERED HEREIN, THE COURT WILL REFRAIN FROM GRANTING INJUNCTIVE RELIEF AT THIS TIME SO AS NOT TO PREJUDICE THE DEFENDANTS' RIGHTS IN AND TO ITS COUNTERCLAIM AND DEFENSE ASSERTED IN ITS FIRST AMENDED ANSWER AND THE CLAIMS IN ITS INDEPENDENT SUIT, CA. NO. 93–839.

██ The Court is in receipt of the Defendants' first amended Answer, filed on April 22, 1993. This Amended Answer asserts a Counterclaim against York for breach of contract, breach of fiduciary duty and insider trading.[3] The Defendants allege misconduct

---

**3.** The Government alleges three counts in its counterclaim: breach of contract, insider trad-

ing, and unjust enrichment. More specifically, the counterclaim alleges that:

by York as to some of the mortgage-backed securities at issue in this litigation.

The Defendants made these same allegations against York generally as to all Counts by the Defendants in their first Answer, filed on April 16, 1993; the Answer stated that York was not entitled to recovery in this lawsuit under the Clean Hands Doctrine.[4] However, the Defendants did not raise this defense in its summary judgment pleadings regarding the NHA claims in Counts I, X, XI, and XII.

In addition, the Government has filed a new civil action, which has been assigned to this Court as a related case, in which the Government makes the same insider trading allegations against three different defendants [5] based on the same set of facts as set forth in this case; in the new action, the Government does not name York Associates as a defendant because of the Counterclaim the Government has asserted in this older suit. *See United States v. York*, CA. No. 93–839.[6]

In the instant case, the misconduct here has been asserted both as a Counterclaim and Defense. Based on the information contained in the Defendants' Answer and Counterclaim, the Court finds that the factual and legal issues raised by the Defendants' Answer and Counterclaim are different than those issues raised under the four NHA claims in the Plaintiff's Complaint. There-

fore, the Court believes that it is appropriate to decide the NHA claims at this time and defer a decision on the allegations raised by the Defendants' Counterclaim, because the resolution of the NHA claims involves only the determination of the legal rights of the parties in regard to the application of the statutory provisions controlling coinsurance loans.

However, the Court makes its decision as to the NHA claims without any determination as to the Defense and Counterclaim raised by the Government in this action. The Court finds no reason why these claims could not be asserted against York Associates in the more recent action just filed with this Court, CA. No. 93–839. In fact, the Defense and Counterclaim raised by the Government in this suit are related to those claims set forth by the Government in its new action. *See supra* note 6.[7] Furthermore, at a Hearing before the Court on April 26, 1993, the Government admitted that the Counterclaim asserted in this older action was a permissive Counterclaim. For these reasons, the Court will dismiss this Defendants' Counterclaim in this action without prejudice and consolidate the Counterclaim, together with any other claims the Government may assert as part of its Unclean Hands defense, with the new suit filed by the Government, CA. No. 93–839.

As the determination of the NHA counts will not affect the possible recovery of the

---

York Associates violated, and engaged with others to violate, its duty of trust and loyalty to GNMA by purchasing a GNMA mortgage backed security at a market price that was materially less than the face value of the security at a time when York Associates and other participants in the scheme possessed material, non-public information that the GNMA mortgage backed security would imminently be redeemed at par.
Defendants' Amended Answer, Counterclaim ¶ 1.

**4.** The Clean Hands Doctrine is an equitable principle meaning that "a litigant may be denied relief by a court of equity on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue." 27 Am.Jur.2d § 136. The doctrine is one which rests in the sound discretion of the court. *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); *Teamsters Local 639 Employer's Pension Trust v. Johnson,*

1992 WL 200075 (D.D.C.1992); The Doctrine is used to determine what remedy, if any, is due to a Plaintiff who would otherwise be entitled to relief. *Shondel v. McDermott*, 775 F.2d 859 (7th Cir.1985).

**5.** The defendants in this new action are John C. York, first Commonwealth Savings Bank, and USGI, Inc.

**6.** "Named as a counterdefendant for breach of fiduciary duty in a related action, *York Associates, Inc. v. Cisneros*, Civil Action No. 91–3094 (CRR), and therefore not named as a defendant here, is York Associates." Complaint in Civil Action No. 93–839. ¶ 8.

**7.** In fact, at a hearing before the Court on April 26, 1993, the Government informed the Court that it may assert more claims against York than currently set forth in the Government's Counterclaim.

**20**

Defendants for their Counterclaim or Defense, the Defendants' rights will not be prejudiced by the Court deciding the NHA claims in this suit now. However, as the Defendants may be entitled to offset any monetary relief which the Plaintiff may be entitled to receive under these NHA counts by virtue of their Counterclaim, the Court shall reserve decision and any award of injunctive relief until such time as the remaining issues in the related case, C.A. No. 93–839, are resolved. In the meantime, the Court will dismiss this action without prejudice, including the permissive Counterclaim and consolidate it with the Government's suit entitled *United States v. York*, C.A. No. 93–839. The Court will also dismiss the remaining Counts of this suit, Counts III, IV, VIII and IX, as they involve the Administrative Procedures Act which the Plaintiff's counsel has agreed in open Court would now be moot in light of the Court's Summary Judgment decision in favor of the Plaintiff on its National Housing Act claims.

## V. CONCLUSION

The Court concludes that the requirements of § 520 of the National Housing Act are not calculations and are not inconsistent with the provisions of § 244 of the National Housing Act. The Court also concludes that § 520 applies to the cash reimbursement payments at issue in this case. Accordingly, the Court shall declare that § 520 of the National Housing Act applies to loans of coinsurance made pursuant to § 244 of the NHA in this case and that § 520 requires that cash reimbursements equal the face amount of the debentures plus the amount of interest that the debentures would have earned from the date of default. However, the Court shall not grant injunctive relief at this time, because the resolution of the C.A. No. 93–839, including the Counterclaim and Defense raised by the Government in this suit, may affect the rights of the parties to monetary relief. The Court shall issue an Order of even date herewith consistent with the foregoing Opinion.